G-holson, J.
The grounds of attachment first stated in the code apply in cases where the debt or demand for the recovery of money is due or has accrued. The mode of obtaining an order of attachment upon thosé grounds is by an application to the clerk, and filing in his office an affidavit, showing the nature of the plaintiff’s claim, that it is just, the amount which it is believed the plaintiff ought to recover, and “ the existence of some one of the grounds for an attachment.” As to the manner in which the ^grounds for an attachment shall be shown, the code is silent.
Prior to the adoption of the code, a plaintiff was allowed to obtain a capias ad respondendum upon grounds and in a manner very similar to those prescribed by the code for obtaining an order of attachment. The sufficiency of an affidavit for a capias ad. respondendum was very fully considered by the Supreme Court, in the case of Hockspringer v. Ballenburg, 16 Ohio, 304. It was held in that case that an affidavit substantially in the language of the statute was sufficient, although the ground stated involved a charge of an intent to defraud, and no facts or circumstances were set forth. It was strongly yet vainly pressed upon the court in that case, that no man could know as a fact another’s intent, but only the facts and circumstances which disclosed it, and that when the affidavit alleged an intent in the words of the statute, it was simply an allegation of an inference or belief.
From an examination of the code it appears that very similar grounds are stated for the provisional remedy of an order for arrest and for that of an attachment. But in the former case, after the provision for establishing the grounds, it is added: “ The affidavit shall also contain a statement of the facts claimed to justify the belief in the existence of one or more of the above particulars.” The very natural conclusion would follow that what was so, expressly required in the one case would' not be necessary in the other; and we believe the usual practice since the code, in ordinary actions, has been to state the grounds for an attachment, in accordance with the rule sanctioned in the case of Hockspringer v. Bal *315 lenburg. With this practico we do not think it would be proper for this court now to interfere.
But there is a class of grounds for an attachment provided by the code to which different considerations would seem to apply. In certain cases an order of attachment may be obtained in an action brought before the debt is *due. The attachment is to be granted by the court, or by a judge thereof. No specific form of showing the existence of the grounds is pointed out. In like language as in an ordinary case, the plaintiff is required to make an oath in writing, showing the nature of his claim, that it is just, when the same will become due, and “ the existence of some one of the grounds for attachment enumerated.” We think, however, that in this class of cases proper practice would require that something more than a mere repetition of the' language of the code should be presented to a judge. He ought to be placed in a position to act intelligently in the exercise of the power and discretion conferred by the code. A court or judge, before allowing an attachment in an action for a debt not due, might very properly require a statement of facts and circumstances, such as ordinarily evince and disclose an intent, purpose, or effect in the disposition of the property, injurious to the rights of creditors, and not act upon what might very probably bo mere relief, or an inference hastily drawn.
In the present case the affidavit certainly disclosed no such facts or circumstances,- and the order might, and we might say ought to, have been refused. But the order having been allowed, the question whether the action of the judge, in granting it, or in refusing to discharge it upon the ground of the insufficiency of the affidavit, can be reviewed or corrected, is quite different, and is controlled by other considerations. When a statement is required, in no proscribed form, as a predicate for the action of a court or judge, and as a step in a remedial proceeding, conclusive upon no right of the party, whether that statement shall be more or less definite and specific, must be regarded as a matter of practice, resting in the discretion of the court of original-jurisdiction, and not a proper subject for inquiry in a proceeding in error. The same principle applies to the variation in the affidavit from the language of the statute. While it would have been bettor to follow that language, we can not say that the difference between “ to *the effect of” and “ which would have the effect of,” is substantial and material. The gravamen of the charge is the removal of property and the *316 consequent injurious hinderance and delay to the creditors in the collection of their debt; and we must understand the words “hinder and delay ” contained in the affidavit, as used in an injurious and not in an innocent sense. , Still less sustainable is the objection that the charge of a hinderance and delay is limited to the particular creditors, and is not extended to creditors generally. Indeed, we see no reason to suppose that a single creditor, if there were only one, is not as much entitled to protection from the fraudulent conduct of his debtor, as any number of creditors. It would bo a novel defense to a charge of intent to defraud a particular creditor, that there were other creditors whom there was no intent to defraud.
A sufficient charge, or one which must now be deemed sufficient, having been made to sustain the order of attachment, had the same remained unanswered, there are two further inquiries: 1. Who was entitled to meet and repel the charge ? 2. Whether there was error in the decision of the court as to the fact of the truth of the charge.
In the ordinary cases of attachment, the grounds upon which they are obtained constitute no proper part of, and should not be embraced in, the pleadings in the action.. Neither the affidavit nor the order of attachment are pleadings admitting of an answer. The attachment is a special proceeding ancillary to the action, but so independent of it that an order in the attachment proceeding may, when final, be the subject of a petition in error during the pendency of the action.
The mode provided for the defendant to attack the order of attachment is a motion to discharge. Upon a motion, or by an application disconnected from the pleadings in the action, other creditors having orders of attachment levied upon the property must be heard, as to any question of priority, in the satisfaction of their respective judgments. ^Inextricable confusion would result if any other course were admitted. We see no reason to suppose that a different rule applies in the case of actions for debts not due. Indeed, the code provides that the same provisions shall apply in both cases (section 236). It is true, in the latter case, the action falls with the attachment.' But the proper course to produce this result is by a motion to dismiss, and not by a defense. It is the affidavit which sustains the attachment, and not averments in the petition. In the one, most of the facts stated must be verified as a matter of knowledge; in the other, mere belief will suffice. A defective *317 affidavit could not be sustained by statements in the petition. A defendant has, undoubtedly, the right to attack the affidavit upon motion, and there is no propriety in allowing the same thing in answer to the petition. This course is better for the defendant — ■ he can act at once if he desires to relieve his property from the levy, and is not bound to wait for the framing of an issue upon the pleadings, and, it might be, for a trial before a jury.
We are satisfied, therefore, that there was no error in overruling the demurrer to the amended petition of the plaintiffs. For like reasons, there was no error in dismissing Thomas Wiley as a defendant in the action. His only -interest was as a subsequent attaching creditor, and any question of priority between him and the plaintiffs in this action could be properly settled upon motion —a course which the code clearly contemplates. Code, sec. 225. Such an inquiry is connected with the special proceedings in attachment, instituted by the different creditors, and not with the action brought by the one who first obtains an order of attachment, and in connection with those proceedings, their respective rights ought to be adjudicated.
The right of the defendant, Richard Harrison, to move to discharge the order of attachment, is expressly secured by the code, secs. 228, 229. He had the right to move upon the insufficiency of the affidavit of the plaintiffs, or upon his own affidavit, the affidavit of others, and upon ^papers and evidence in the case. If he took the latter course, the right was given to the plaintiffs to oppose the motion by affidavits and other evidence in addition to that on which the order of attachment was made. A motion of the latter description appears to have been made and decided by the court. The bill of exceptions shows that affidavits on the part of the defendant — being his own, one in the shape of an answer, and the other of a deposition — were read, and also the original affidavit of the plaintiffs and the subsequent one of their counsel.
An examination of these papers shows that, as evidence, if they may be so called, they are of a most unsatisfactory character, bsing, for the most part, mere general statements on the one side, and as general denials on the other. The particular facts or circumstances are not disclosed, and it is difficult to ascertain how the court was able to Arrive at a satisfactory conclusion. But there was offered on both sides what the code declares, to be proper evi *318 dence, and we are called upon to review the decision of the court below as to the credibility of the witnesses and the weight to be given to their statements. We may very reasonably conclude from the different phases of the complicated controversy, bringing the parties so frequently before the court, that the judge who decided the motion had advantages in forming an opinion which we do not possess. We certainly are not in a condition to say that the decision was right, or that we would have decided in the same way; but we are equally unable to say that it was clearly erroneous. We should be able to do so, to justify a reversal of a decision, upon a question of fact, and must therefore affirm the judgment.
Brinkerhofe, O. J., and Scott and Sutliee, JJ., concurred.
Peck, J., was absent.